**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: ______________**

GREENFLIGHT VENTURE CORPORATION,

Plaintiff,

vs.

WHITEPAGES, INC.;
TRUE SOFTWARE SCANDINAVIA A.B.;
and ALEX ALGARD, an individual,

Defendants.
_______________________________________/

## COMPLAINT

Plaintiff Greenflight Venture Corporation ("Greenflight" or "Plaintiff"), by and through its undersigned attorneys, brings this action for patent infringement against Defendants Whitepages, Inc., True Software Scandinavia A.B., Alex Algard (collectively, "Defendants") as follows:

## THE PARTIES

1. Plaintiff Greenflight Venture Corporation ("Plaintiff" or "Greenflight") is a Florida C Corporation with its headquarters located at 10312 Orchid Reserve Drive, West Palm Beach, FL 33412. Greenflight operates an application, or "app," called "Caller-ID" on the Apple iTunes App Store.

2. On information and belief, Defendant Whitepages, Inc. ("Whitepages") is a Delaware corporation with its headquarters located at 1301 Fifth Street, #1600, Seattle, WA 98101. Whitepages operates an app on the Apple iTunes App Store called "ID BY WHITEPAGES."

3. On information and belief, Defendant True Software Scandinavia AB ("True Software") is a Swedish corporation with its headquarters located at Kungsgatan 15, 111 43 Stockholm, Sweden. True Software operates at a U.S. facility at 657 Howard Street, San

Francisco CA 94105. True Software operates an app on the Apple iTunes store called "TRUECALLER."

4. On information and belief, Defendant Alex Algard ("Algard") is the founder and CEO of Whitepages. Mr. Algard is a United States citizen. Algard resides in Seattle, Washington.

## JURISDICTION AND VENUE

5. Plaintiff asserts a claim for patent infringement against Defendants arising under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has jurisdiction over the subject matter of this action under at least 28 U.S.C. §§ 1331 and 1338.

6. Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400.

7. This Court has personal jurisdiction over the Defendants under the United States Constitution, the State Laws of Florida, and/or the Federal Rules of Civil Procedure. Defendants have substantial and continuous contacts with this judicial district. For example, Defendants have conducted business continuously and systematically in the State of Florida for many years and continues to conduct that business actively today including, without limitation, by conducting business online and committing acts of patent infringement through their "ID By Whitepages" and TrueCaller apps on the Apple iTunes store. In addition, Defendants Whitepages and Mr. Algard own and operate a website under the domain name whitepages.com and an app on the Apple iTunes store called "Whitepages Pro." Defendants Whitepages and Mr. Algard have conducted business continuously and systematically in the State of Florida on their whitepages.com website and on their "Whitepages Pro" app.

## FACTS

8. On October 14, 2014, the United States Patent and Trademark Office ("USPTO") duly and lawfully issued U.S. Patent No. 8,861,698 ("'698 Patent"), entitled "Post-Page Caller Name Identification System," to inventor Jeffrey D. Isaacs. A true and correct copy of the '698 Patent is attached hereto as Exhibit A.

9. The '698 Patent is currently in full force and effect.

10. All right, title and interest in and to the '698 Patent belongs to Greenflight, the sole assignee of the '698 Patent.

11. The '698 Patent involves describes a novel convergence of two telephone network related technologies, namely SS7 Caller Name ID ("CNAM"), and internet based reverse telephone number search.

12. CNAM reached widespread use in the 1980s, allowing landline phones to show the name of an incoming caller. Prior to that time, a called party generally had no way to trace the name of a caller. CNAMs were stored in a relatively small number of databases managed by the "Baby Bell" telephone companies. With the proliferation of mobile cellular phones, CNAM functionality often was omitted. Instead of displaying the name of a caller, many mobile phones today will display "UNKNOWN CALLER", or a city name e.g., "W PALM BEACH." In short, despite great advances in the past decade related to mobile phone technology, Caller Name ID was often left behind.

13. Reverse telephone number searches have, likewise, evolved over the past twenty years. In the 1980s, the Baby Bells disbursed paper phone books to each landline customer, and this was the primary mode of looking up a phone number. These alphabetical listings allowed one to retrieve the phone number associated with a given individual. In 1997, Defendants Whitepages and Algard uploaded and copied the Baby Bell phonebooks onto their internet searchable database. This had the effect of allowing reverse telephone number lookups, i.e., entering a phone number to search for its owner. Whitepages has enjoyed a near-monopoly of the internet reverse search industry, and according to public documents, reaches over 55 million customers each month.

14. The proliferation of smartphones in the past decade, in view of changes in reverse telephone search and CNAM, created a less than ideal situation for the average consumer. As noted, many incoming calls no longer had CNAM identification. To make matters worse, Whitepages technology of copying phone books onto the internet had become obsolete. Mobile phones typically are not listed in the white & yellow paged phonebooks. Hence, the 55

million monthly internet reverse search users often retrieve no results. In the words of Defendant Algard on Fox News with Maria Bartiromo in December 2015, "landlines are dying a fast death."

15.     In the event of such non-result, Defendant Whitepages monetizes its product by referring the customer to Spokeo.com. Spokeo then baits the customer with a 99cent charge to look up the phone number in proprietary databases which stem from credit card, bank, and other undisclosed sources. The customer also typically agrees to a recurring monthly subscription of approximately $19/month.

16.     In sum, Defendant Whitepages has profited on the order of billions of dollars by charging the average American for looking up phone numbers using questionable recurring billing practices. Oftentimes, consumers are surprised to see these subscription charges on their credit card statement some six months after using the service. This results in a high percentage of complaints to Whitepages, Spokeo, and Apple Computer's App Store.

17.     In 2013, Plaintiff developed a free technology which bridged the gap between CNAM and internet reverse search. This technology is known as the Post Page Caller Name Identification System, and is described in the '698 Patent. Plaintiff released its "Caller-ID" app onto the Apple iTunes App Store in Summer of 2013. The app has over ten thousand positive user reviews; representative reviews are "finally, a phone search that didn't ask for my credit card number," "far superior to Whitepages," "the only that works," "why wasn't this invented ten years ago?" and so forth.

18.     In early 2014, Defendant True Software revised its TrueCaller app to include the '698 CNAM technology.

19.     In summer 2014, Defendant Whitepages introduced version 1.0 of its "ID by Whitepages" app. In August 2014, Greenflight sent an infringement notice to Apple Legal about Whitepages' infringement of the '698 Patent. In turn, on information and belief, Apple requested that Whitepages provide "evidence [of non-infringement] acceptable to apple" and "documentation wherever possible." On information and belief, as of the filing date of this

complaint, Defendants have failed to provide any such documentation of evidence of non-infringement of the '698 Patent, as requested by Apple. Despite knowingly being an accused infringing device, Defendant Algard addressed the nation on Fox Network television to promote the release of "ID by Whitepages," falsely describing it as the leading app in its class.

20. The "ID by Whitepages," and "TrueCaller" apps are collectively referred to herein as the "Accused Products."

21. Defendants have contributorily infringed and induced others to infringe at least Claims 1 and 5 of the '698 Patent by making, having made, importing, using, offering for sale, and/or selling the Accused Products, and by performing, implementing, and carrying out, processes and methods with respect to the Accused Products, in violation of 35 U.S.C. § 271(a), (b) and (c).

22. For example, but not as a limitation, the Accused Products include a system that comprises: i) functionality independent of a called party's telephone carrier and device providing a calling party's CNAM after entry of the calling party's telephone number; ii) an entry field, within a mobile phone application, permitting the called party to input a query, post-page, specifying the calling party ID ("CID"); iii) an SS7 interfacing node permitting real-time access to the SS7 network; iv) a function serving as a direct interface between the called party's query and the calling party carrier's respective CNAM database; and iv) a display within the mobile phone application of the successfully queried calling party CNAM.

23. The Accused Products also provide a method for providing a called party with the calling party's CNAM after a network page, independent of interaction with the carrier or device receiving the page, comprising the following steps: a) entering of the calling party's telephone number CID into a mobile phone application query field; b) connecting to the PSTN via an SS7 interfacing node; c) directly querying the calling party carrier CNAM database with the CID query entry; and d) displaying the successfully queried calling party CNAM on the mobile phone application user interface.

**PATENT INFRINGEMENT**

**(Against All Defendants)**

24. Plaintiff realleges paragraphs 1 through 23 of this Complaint as though fully set forth herein.

25. Defendants Whitepages and Alex Algard have contributorily infringed and induced others to infringe at least Claims 1 and 5 of the '698 Patent by making, having made, importing, using, offering for sale, and/or selling the "ID by WhitePages" app and by performing, implementing, and carrying out, processes and methods with respect to the "ID by WhitePages" app, in violation of 35 U.S.C. § 271(a), (b) and (c).

26. Defendant True Software has contributorily infringed and induced others to infringe at least Claims 1 and 5 of the '698 Patent by making, having made, importing, using, offering for sale, and/or selling the "TrueCaller" app and by performing, implementing, and carrying out, processes and methods with respect to the "TrueCaller" app, in violation of 35 U.S.C. § 271(a), (b) and (c).

27. On information and belief, Defendants Whitepages and Alex Algard was informed about their infringement of the '698 Patent on August 2014. Defendants Whitepages and Alex Algard have been and are aware of their infringement, and have been and are willfully infringing Claims 1 and 5 of the '698 patent.

28. On information and belief, Defendant True Software was informed of their infringement of the '698 Patent on December 23, 2015. Defendant True Software has been and is aware of their infringement, and has been and is willfully infringing Claims 1 and 5 of the '698 patent.

29. Plaintiff has been irreparably harmed by Defendants' acts of infringement of Claims 1 and 5 of the '698 Patent, and will continue to be harmed unless and until Defendants' acts of infringement are enjoined and restrained by order of this Court. Plaintiff has no adequate remedy at law to redress Defendants' continuing acts of infringement. The hardships that would be imposed upon Defendants by an injunction are less than those faced by

Defendants should an injunction not issue. Furthermore, the public interest would be served by issuance of an injunction. Accordingly, Plaintiff is entitled to permanent injunctive relief against such infringement pursuant to 35 U.S.C. § 283.

30. As a result of Defendants' acts of infringement of Claims 1 and 5 of the '698 patent, Plaintiff has suffered and will continue to suffer damages. Plaintiff is entitled to compensation for such damages pursuant to 35 U.S.C. § 284 in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendants as follows:

(a) That Defendants and their parents, affiliates, subsidiaries, officers, agents, servants, employees, attorneys, successors, and assigns, and all those persons in active concert or participation with them, or any of them, be permanently enjoined from making, using, offering for sale, selling, causing to sell, importing, exporting, supplying and/or distributing within, to and/or from the United States, or over the internet or on any app, the "ID by Whitepages" and "TrueCaller" apps;

(b) A finding that Defendants have infringed literally and/or under the doctrine of equivalents, Claims 1 and 5 of the '698 Patent;

(c) A finding that Defendants' infringement has been willful;

(d) That Plaintiff be awarded its actual damages, including without limitation lost profits and/or royalties;

(e) That Plaintiff be awarded pre-judgment interest and post-judgment interest at the maximum rate allowed by law, including an award of pre-judgment interest, pursuant to 35 U.S.C. § 284, from the date of each act of infringement of Claims 1 and 5 of the '698 Patent to the day a damages judgment is entered, and a further award of post-judgment interest, pursuant to 28 U.S.C. § 1961, continuing until such judgment is paid, at the maximum rate allowed by law;

(f) That the Court order an accounting for damages through judgment and post-judgment until Defendants are permanently enjoined from further infringing activities;

(g) That the Court declare this to be an exceptional case pursuant to 35 U.S.C. § 285 and require Defendants to pay the costs of this action (including all disbursements) and attorney's fees as provided by 35 U.S.C. § 285;

(h) That the Court award enhanced damages pursuant to 35 U.S.C. § 284;

(i) That the Court award supplemental damages for any continuing post-verdict infringement up until Defendants are permanently enjoined from further infringing activities;

(j) That the Court award a compulsory future royalty in the event an injunction is not awarded;

(k) That the Court require Defendants to pay interest on such damages at the legal rate; and

(l) That Plaintiff be awarded such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a jury trial for all claims and issues triable by a jury.

Dated: January 14, 2016

Respectfully submitted,

FOX ROTHSCHILD LLP
222 Lakeview Avenue, Suite 700
West Palm Beach, FL 33401
Telephone: (561) 804-4441
Facsimile: (561) 835-9602

By: *s/David A. Greene*
David A. Greene
Florida Bar No. 87629
dgreene@foxrothschild.com
*Attorneys for Plaintiff, Greenflight Venture Corporation*